UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RAYMOND VELASQUEZ,

                 Plaintiff,

- versus -

CITY OF NEW YORK and ROSE AGRO, Warden of GRVC in her official and individual capacity,

                 Defendants.

NOT FOR PUBLICATION

MEMORANDUM
AND ORDER

12-CV-4689

JOHN GLEESON, United States District Judge:

        On September 14, 2012, plaintiff Raymond Velasquez commenced this *pro se* action pursuant to 42 U.S.C. § 1983 while incarcerated at Greene Correctional Facility. He alleges that, while incarcerated at George R. Vierno Center (GRVC) on Rikers Island as a pretrial detainee, the Defendants violated his constitutional rights.[1] I grant Velasquez's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 and, as set forth below, I dismiss the complaint without prejudice.

A.    *Background*

        Velasquez alleges that on November 7, 2011, while incarcerated on Rikers Island as a pretrial detainee, he was injured on the basketball court in the inmate yard due to "unlevel ground and cracked up concrete in the yard." Compl. 6, 11, ECF No. 1. As a result of the "damage and lack of care to the ground in the yard, cracks," he tore a ligament and ruptured a blood vessel in his left ankle. He alleges that he was injured "by no fault of his own personal doing," but that Defendants "malicious[ly]" failed to "keep a secure and safe environment" at

---

[1]     I take judicial notice that the name of the Warden of th George R. Vierno Center is "Ros*e Agro*," not "Rosa Argo" as listed in the Complaint, and I direct the amendment of the caption accordingly.

Rikers Island. The ground is, he alleges, "a[n] unfit area for inmates who are pre-trial detainees, convicted, and parole violators alike." *Id.* at 7. He had to "endure physical therapy for some 45 days[2] due to his injury and an excessive amount of pain and suffering," *id.* at 8, and he alleges that this injury caused "extreme pain as well as emotional pain and suffering."

Velasquez alleges that the Defendants violated his rights under the federal Constitution, including his rights under the "Fourth Amendment," and the "Eighth Amendment." He seeks money damages in the amount of $100,000 for pain and suffering and bodily injuries; $100,000 for failure to provide a safe and secure prison condition for pretrial detainees; and punitive damages in the amount of $200,000. *Id.* at 9-12.

B.      *Standard of Review*

Because petitioner is proceeding *pro se*, his pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted); *accord Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("Even after *Twombly*, . . . we remain obligated to construe a *pro se* complaint liberally."). Nevertheless, I must screen "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and thereafter "dismiss the complaint, or any portion of the complaint," if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. §1915A. *See generally Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Similarly, I am required to dismiss an *in forma pauperis* action if, *inter alia*, it fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B).

---

[2]      Later in the complaint, he alleges that he "had to go to therapy for some 30 days." Compl. at 13

2

C.  *Governing Law*

Section 1983 of Title 42 to the U.S. Code authorizes private persons to enforce their federal constitutional rights against defendants who act under the color of state law. The statute provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . .

42 U.S.C. § 1983

Section 1983 does not create any federally protected right, but simply provides a mechanism to enforce federal rights established elsewhere. *See Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). To sustain a claim brought under § 1983, plaintiffs must "'allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States.'" *Rae v. Cnty. of Suffolk*, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010) (quoting *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999)). In addition, if – as here – the plaintiff is seeking to establish the liability of a municipality, the deprivation of his federal right must be attributable to the enforcement of a municipal policy or custom. *See Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995).

Liberally construed, Velasquez alleges that (1) the Warden, in her official and individual capacity, and (2) the City of New York violated both his Eighth[3] and Fourth

---

[3] Since the Eighth Amendment applies only to convicted prisoners, *see Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996), I analyze Velasquez's *pro se* complaint as setting forth a claim as to substantive violations of the Fourteenth Amendment. The "the standard for analyzing a pre-trial detainee's Fourteenth Amendment claim is the same as the Eighth Amendment standard." *Thomas v. Nassau Cnty. Corr. Ctr.*, 288 F.Supp.2d 333, 337 (E.D.N.Y. 2003) (internal quotation marks omitted).

3

Amendment rights by maliciously failing to maintain the recreation yard, thereby creating the condition that led to his injury. Because Velasquez was a pretrial detainee at the time, I also construe his complaint as (3) alleging that the challenged condition amounts to "punishment" without due process of law. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law . . . the proper inquiry is whether those conditions amount to punishment of the detainee.").

D. *Discussion*

   1. *Claims Against the Warden*

     a. *Fourteenth Amendment*

   The Fourteenth Amendment ensures that a prisoner may not be deprived of liberty without due process of law, and this liberty includes a prisoner's right to safe conditions. *See Youngberg v. Romeo*, 457 U.S. 307, 315-316 (1982); *see also Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (The Fourteenth Amendment "requires prison officials to take reasonable measures to guarantee the safety of [detainees] in their custody."). While in custody, a pretrial detainee has a Fourteenth Amendment substantive due process right to care and safe conditions. However, not all injuries sustained by a person detained in a prison implicate the federal Constitution. It is well-settled that mere negligence will never give rise to a substantive due process violation since "negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998); *see also id.* ("the Due Process Clause of the Fourteenth Amendment does not transform every tort committed by a state actor into a constitutional violation.") (internal quotation marks and text modification

4

omitted).

The Second Circuit has set forth a two-part test for determining whether a prison official's actions or omissions rise to the level of deliberate indifference to his liberty interest in safe jail conditions:

> First, the plaintiff must demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm. Second, the plaintiff must demonstrate that the defendant prison officials possessed sufficient culpable intent. The second prong of the deliberate indifference test, culpable intent, in turn, involves a two-tier inquiry. Specifically, a prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm.

*Hayes*, 84 F.3d at 620 (citation omitted)

Deliberate indifference is "a mental state more blameworthy than negligence," and is "a state of mind that is the equivalent of criminal recklessness." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (internal quotation marks omitted). The Second Circuit has stated that "deliberate indifference involves unnecessary and wanton infliction of pain, or other conduct that shocks the conscience." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

Construing the complaint liberally, Velasquez's complaint alleges that a recreation yard that was maliciously maintained in a state of disrepair to deprive inmates at the Rikers Island jail a "secure and safe environment," and that such a condition caused him severe injury and pain. Velasquez alleges facts that the ground had "cracked up concrete" and was "unlevel" and he specifically alleges that the defendant acted with malice and a "lack of care."

Even assuming that Velasquez has pleaded facts that establish the violation of an interest protected by the Fourteenth Amendment's Due Process Clause, his complaint does not allege the personal involvement or culpable intent of Warden Agro. "[P]ersonal involvement of

5

defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004) (internal quotations marks omitted). Velasquez does not plead that Agro was personally aware of an excessive risk to inmate health or safety. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Accordingly, I find that his complaint fails to state a claim against the Warden, and therefore, it must be dismissed.

Finally, even construing the complaint liberally, I conclude that Velasquez does not allege any facts that would suggest that the condition of the recreation yard was imposed as a punitive measure. Accordingly, he fails to state a claim against the Warden in either her official or individual capacity, and I dismiss the claim against the Warden for violating the Fourteenth Amendment without prejudice.

b. *Fourth Amendment*

Velasquez claims that the Warden, acting under color of law, violated his Fourth Amendment rights. The Fourth Amendment to the Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." U.S. Const. amend. IV.

In any § 1983 claim predicated on the Fourth Amendment, the first step is to determine whether there has been a constitutionally cognizable search or seizure. *Medeiros v. O'Connell*, 150 F.3d 164, 167 (2d Cir. 1998). "Physical restraint or an assertion of authority to restrain a person's freedom of movement by law enforcement officers would, in most instances, constitute a seizure." *Pinto-Montoya v. Mukasey*, 540 F.3d 126, 132 (2d Cir. 2008). A Fourth Amendment seizure occurs "when there is a governmental termination of freedom of movement

6

*through means intentionally applied.*" *Brower v. Cnty. of Inyo*, 489 U.S. 593, 597 (1989) (emphasis in original). Construing the complaint liberally, I conclude that Velasquez has not pleaded any facts from which a reasonable person could conclude that he was "searched" or "seized" for the purposes of the Fourth Amendment. Accordingly, I find that he fails to state a claim under the Fourth Amendment.[4]

2. *Claims Against Entity Defendant, the City of New York*

Under the standard established by *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), a municipality can be held liable under § 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality. *Id.* at 690-91; *see also Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011) (municipalities can be held liable for "practices so persistent and widespread as to practically have the force of law."). Absent such a custom, policy, or usage, a municipality cannot be held liable for the tort of its employee. *Monell*, 436 U.S. at 691. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 131 S.Ct. at 1359. In some limited circumstances, a city's decision not to train certain employees about their legal duty to avoid violating constitutional rights may rise to the level of an official government policy for purposes of § 1983. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989). However, to state a claim based on a failure to train, a plaintiff must plead that a municipality's failure to train amounted to deliberate indifference to the rights of persons with whom the untrained employees come into contact. *Id.* at 388.

---

[4] For the same reasons, I find that Velasquez fails to state a claim against the City of New York for violating the Fourth Amendment.

Even liberally construing the complaint, Velasquez's allegations are insufficient to state a § 1983 cause of action against the City of New York. He has not alleged the existence of a formal policy which is officially endorsed by the the City of New York to maintain the recreation yard in a state of disrepair or to decline to make repairs. Nor has he alleged any facts that would suggest any actions taken or decisions made by City of New York policymaking officials which caused the alleged violations. Moreover, even liberally construing his complaint, Velasquez does not allege any facts from which this Court can construe any allegation of a failure of the City of New York policymakers to properly train or supervise their subordinates amounting to "deliberate indifference" to the rights of those who come in contact with their employees. Accordingly, the complaint fails to state a claim and is dismissed without prejudice.

E.  *Conclusion*

The complaint, filed *in forma pauperis*, is dismissed pursuant to 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B). I certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

So ordered.

_____
John Gleeson, U.S.D.J.

Dated:		Brooklyn, New York
		November 21, 2012